## Bowen v. Walton.

(Decided February 28, 1911.)

### Appeal from Taylor Circuit Court.

Sale—Fraudulent Representations.—Appellant sold his farm to appellee for certain cash consideration and for eight shares of stock in a local corporation, claiming that appellee fraudulently represented that the stock was a dividend paying stock, whereas it was practically worthless. Appellant brought this suit to recover the value at which the stock was taken. Held, that the evidence was insufficient to sustain the charge of fraud.

H. N. BEAUCHAMP and B. A. RICE for appellant.

C. W. WRIGHT and J. T. MOSS for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Appellant, George A. Bowen, being heavily in debt, conveyed a certain farm which he owned to his brothers, J. R. and J. L. Bowen, for the purpose of protecting himself and saving his brothers from liability on certain of his debts. The agreement between appellant and his brothers was that they were to pay appellant's debts and turn over the balance, if anything, to him. Appellant and his brothers, through a real estate agent, began negotiations with appellee for the purpose of selling the latter the farm refered to. These negotiations were

.begun in November, 1908. The sale was finally consummated in January, 1909. Appellee agreed to pay $7,000 for the farm only on the condition that fifty-eight shares of the Campbellsville Electric Light Company stock, of the par value of $50 per share, should be taken by appellant at $3,190 cash, or ten per cent. above its par value. Appellant agreed to this arrangement, but his brothers declined to make the deed, on the ground that the cash realized from the sale was not sufficient to pay appellant's debts. Upon the insistence of appellant they finally agreed to carry out the trade, provided appellee would loan appellant, upon the electric light stock, the sum of $2,175. Appellee consented to this arrangement, and the trade was consummated.

Some months later, appellant brought this action against appellee to recover the sum of $3,190, with interest, and charged in his petition that the electric light company stock was worthless, and that he was induced to purchase the same by reason of the fraudulent representations of appellee to the effect that the stock was "gilt-edge," was paying a good dividend and was worth more than its par value, would sell for a premium of more than ten cents on the dollar, and that he, relying upon such representations, purchased the stock in question. Subsequently he amended his petition and charged that appellee was a director in the electric light company and was familiar with the business of said company, and knew that the representations which he made to appellant were false and untrue. Appellee denied that he made any fraudulent representations, and then set forth all the facts with reference to the transaction. The chancellor denied appellant the relief prayed for, and he appeals.

According to the evidence of appellant, he had a conversation with appellee on January 1st. In that conversation the electric light stock was discussed, and he claims that appellee made the following representations in regard to the stock: "He talked to me at my house about the electric light stock, and he claimed it to be the best thing in Campbellsville, and was the only thing he would be willing to pay above par for, and would rather have the stock than to have the income on the farm if his health would permit, but his health was such that he had to have out-door exercise." In answer to the question "Was anything said in that conversation by Mr. Walton about the stock paying a dividend?" appellant

replied: "There was something said about the dividend, but don't remember what it was." Later on in the testimony appellant claimed that Walton told him the electric light stock was a dividend-paying stock, and that he traded for it on the faith of appellee's words. Appellant admits that appellee declined to purchase the farm unless appellant would take in the electric light stock as a payment of $3,190 cash. He also admits that he was in Campbellsville nearly every day from January 1st up until the time the sale was consummated on January 11th. The only evidence which appellant introduced as to the worthlessness of the stock is the fact that he offered it at public sale, accompanied by the announcement that appellee had a lien on the stock to the extent of $2,175, and no one present would make a bid.

Appellee testified that he refused to buy the farm unless appellant would take in the fifty-eight shares of electric light stock at $1.10 on the dollar. Upon being asked what dividend the stock paid, he remarked that the stock did not pay any dividend in money; that the company was indebted and that the profit went to reduce the debt. He also said that the stock was good if the company was properly managed, but he did not like the management. He referred James Bowen, to whom these remarks were addressed and who was assisting in conducting the negotiations for appellant, to Dr. J. L. Atkinson, president, and B. S. Kinkart, the business manager of the electric light company. Appellant was present during this conversation and heard what was said. Appellee denied that he represented the stock as a good, dividend-paying stock. Other witnesses testified that the stock had sold at from 103 to 106, two sales being made at these quotations. During the year prior to the time the trade was made, the stock had earned from nine to ten per cent, but no dividend was paid. The capital stock of the company amounted to $10,000; its indebtedness amounted to about the same sum; but the plant was worth around $25,000. One witness also testified that appellant came to him and told him that he had found out that the stock was all right, and asked him to see his brothers and induce them to make the sale.

Even if appellant's account of the conversation he had with appellee is correct, it shows that appellee simply entertained a good opinion of the stock in question. When we consider the fact that appellant first stated

that he did not remember what appellee said about the dividends on the stock, but subsequently stated that he represented that it was a good, dividend-paying stock, in connection with appellee's statement that the stock as a matter of fact was not paying a dividend, but that the earnings were being devoted to the payment of the company's indebtedness, we are inclined to the opinion that appellee made no false representations to the effect that the stock was paying a dividend.

Moreover, appellant and appellee were two farmers and were dealing at arm's lengths. There was nothing in the relations which they sustained to each other which required appellee to go into details as to the amount and character of business done by the electric light company and as to the value of its stock. Nor did he in any way prevent appellant from making an investigation in his own behalf. When we consider the fact that there is testimony tending to show that appellant stated to one witness that he had found out that the stock was all right and asked witness to see his brothers and induce them to make the sale, we conclude that he was acting upon his own judgment in closing the transaction.

Furthermore, there is no proof that the stock was, or is, worthless. The fact that no one bid upon it at the time it was offered for sale, is only evidence of the fact that no one present was willing to bid more than seventy-five cents on the dollar for the stock; that it was reasonably worth that amount is shown by the fact that appellee loaned that sum upon the stock as collateral security.

Moreover, if the plant was worth $25,000, as the evidence tends to show, and was only in debt to the extent of $10,000; and if the capital stock was only $10,000, and the corporation was earning more than sufficient to pay the interest on the debt, these circumstances would tend to show that the stock had a substantial value.

Upon the whole case, we conclude that appellant failed to show, either that appellee was guilty of any fraud, or that the stock was practically worthless.

Judgment affirmed.